UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.**<br>1100 13th Street, NW<br>Suite 800<br>Washington, DC 20005<br><br>    **Plaintiff**,<br><br>  v.<br><br>**UNITED STATES DEPARTMENT OF JUSTICE,**<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530<br><br>**FEDERAL BUREAU OF INVESTIGATION,**<br>935 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20535<br><br>    **Defendants.** | Civil Action No. |

## COMPLAINT

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 220 and 2202, for injunctive, declaratory, and other appropriate relief. Plaintiff Project On Government Oversight, Inc. ("POGO") challenges the failure of the United States Department of Justice ("DOJ") and its subcomponent, the Federal Bureau of Investigation ("FBI"), to provide POGO on an expedited basis with all non-exempt documents responsive to a FOIA request POGO filed with the FBI seeking specified documents from the FBI's closed file of its investigation into Thomas Douglas Homan and his alleged acceptance of a bribe in exchange for facilitating future contracts related to border enforcement.

2. This case seeks declaratory relief that DOJ and the FBI are in violation of the FOIA, 5 U.S.C. § 552(a)(6)(E)(i), and DOJ regulations, 28 C.F.R. § 16.5(e), for failing to grant POGO's expedited request for records and for injunctive relief ordering DOJ and the FBI to process and release to POGO immediately the requested records in their entirety.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

5. Plaintiff POGO is a nonpartisan independent organization based in Washington, D.C. and organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981, POGO champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. POGO's investigators and journalists take leads and information from insiders and other sources and verify the information through investigations using the FOIA, interviews, and other fact-finding strategies. POGO's investigative work has been recognized by Members of Congress, executive branch officials, and professional journalism organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic award, for reporting on the Department of Justice's opaque system for handling allegations of attorney misconduct within its ranks. In 2018, POGO won an award from the Society for Advancing Business Editing & Writing for its investigative series scrutinizing the government's oversight of offshore drilling. POGO extensively used records

obtained under the FOIA for this investigation. In 2025, POGO's most recent season of its investigative podcast series that examined the Department of Homeland Security's focus on immigrants and neglect of the threat of domestic violent extremism won two Gold awards from the Signal Awards, a Gold from the Davey Awards, and won third place in the Society for Features Journalism's narrative podcast category. POGO extensively used records obtained under FOIA for all these investigations.

6. The Department of Justice and its subcomponent FBI are federal agencies within the meaning of the FOIA, 5 U.S.C. § 552(f), and have possession, custody, and control of the records POGO seeks in this action.

## STATUTORY BACKGROUND

7. The FOIA requires federal agencies, upon request, to make records "promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless one or more specific statutory exemptions apply.

8. The agency must provide the public records when they are requested in order "to ensure an informed citizenry, vital to the functioning democratic society." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

9. For non-expedited requests an agency must make a determination on a FOIA request within 20 business days and notify the requester of which of the requested records it will release, which it will withhold, and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

10. The FOIA also requires agencies to promulgate regulations that provide for expedited processing of FOIA requests where the requester demonstrates a "compelling need" as well as "other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). The FOIA defines

"compelling need" to include requests "made by a person primarily engaged in disseminating information" where there is an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* at § 552(a)(6)(E)(v)(II).

11. DOJ's FOIA regulations provide for expedition for, among other things, "[a]n urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information[.]" 28 C.F.R. § 16.5(e)(1)(ii).

12. DOJ's FOIA regulations further provide for expedition for "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

13. Agencies are required to make a determination on a request for expedition within 10 calendar days "after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I). DOJ regulations mirror this requirement. 28 C.F.R. § 16.5(e)(4).

14. An agency's failure to respond within 10 calendar days to a request for expedition is subject to judicial review without exhausting administrative remedies. 5 U.S.C. § 552(a)(6)(E)(iii).

15. Agency decisions to deny a request for expedition are subject to judicial review "based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii).

16. For non-expedited requests, the 20-day deadline for an agency to make a determination on a request begins on the earlier of: (l) the date "the request is first received by the appropriate component of the agency" or (2) "ten days after the request is "first received by any component of the agency that is designated in the agency's regulations . . . to receive [FOIA] requests." 5 U.S.C. § 552(a)(6)(A)(ii).

17. In "unusual circumstances," an agency may extend the time limits the FOIA prescribes by written notice to the person making such request that sets forth the reasons for such extension and the date on which a determination is "expected" to be dispatched. The FOIA defines "unusual circumstances" as: (1) the need to search for and collect records from separate offices; (2) the need to examine a voluminous amount of records required by the request; and (3) the need to consult with another agency or agency component. 5 U.S.C. § 552(a)(6)(B)(iii). No such notice shall specify a date that would result in an extension for more than ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

18. If an agency does not respond to an expedited FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review.

**FACTUAL BACKGROUND**

19. On November 11, 2024, President-elect Trump announced that he had named Thomas Homan as his "border czar." Mr. Homan had served as a senior immigration official in Trump's first administration. Mike Ives," Trump Names Thomas Homan 'Border Czar' With a Wide Portfolio," *New York Times* (Nov. 11, 2025), https://www.nytimes.com/2024/11/11/us/politics/trump-homan-immigraationn-border.html.

20. In September 2025, it was reported that in the previous year an FBI undercover operation recorded Thomas Homan accepting a bag containing $50,000 in cash in exchange for a promise to steer government contracts to certain businesses in a second Trump administration. *See, e.g.*, Carol Leonnig and Ken Dilanian, "Tom Homan was investigated for accepting $50,000 from undercover FBI agents. Trump's DOJ shut it down.," *MSNBC.com* (Sept. 20, 2025), https://www.msnbc.com/. At the time, Homan had his own consulting firm that helped

17. In "unusual circumstances," an agency may extend the time limits the FOIA prescribes by written notice to the person making such request that sets forth the reasons for such extension and the date on which a determination is "expected" to be dispatched. The FOIA defines "unusual circumstances" as: (1) the need to search for and collect records from separate offices; (2) the need to examine a voluminous amount of records required by the request; and (3) the need to consult with another agency or agency component. 5 U.S.C. § 552(a)(6)(B)(iii). No such notice shall specify a date that would result in an extension for more than ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

18. If an agency does not respond to an expedited FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review.

**FACTUAL BACKGROUND**

19. On November 11, 2024, President-elect Trump announced that he had named Thomas Homan as his "border czar." Mr. Homan had served as a senior immigration official in Trump's first administration. Mike Ives," Trump Names Thomas Homan 'Border Czar' With a Wide Portfolio," *New York Times* (Nov. 11, 2025), https://www.nytimes.com/2024/11/11/us/politics/trump-homan-immigraationn-border.html.

20. In September 2025, it was reported that in the previous year an FBI undercover operation recorded Thomas Homan accepting a bag containing $50,000 in cash in exchange for a promise to steer government contracts to certain businesses in a second Trump administration. *See, e.g.*, Carol Leonnig and Ken Dilanian, "Tom Homan was investigated for accepting $50,000 from undercover FBI agents. Trump's DOJ shut it down.," *MSNBC.com* (Sept. 20, 2025), https://www.msnbc.com/. At the time, Homan had his own consulting firm that helped

contractors secure border-related contracts and he touted publicly that if Trump won the election, he would be serving in a senior role to carry out promised mass deportations. Carol Leonnig and Ken Dilanian, "How Tom Homan wound up ensnared in an FBI contracts-for-cash sting," *MSNBC. Com* (Sept. 29, 2025), https://www.msnbc.com/msnbc/news/ex-ice-officer-tom-homan-fbi-sting-rcna234467. *See also* Zach Montague, "Tom Homan Was Said to Have Received $50,000 From Agents. He May Not Have to Return It.," *New York Times* (Oct. 8, 2025), https://www.nytimes.com/2025/10/08/us/politics/tom-homan-sting-money.html.

21. In September 2025 it was also reported that the Trump administration had shut down the bribery investigation of Homan. In a public statement FBI Director Kash Patel and Deputy Attorney General Todd Blanche claimed that after a full review the FBI and DOJ "found no credible evidence of any criminal wrongdoing." Leonnig and Dilanian, *MSNBC.com*, Sept. 20, 2025. They reached this conclusion even though a hidden camera reportedly recorded Homan accepting $50,000. *Id. See also* Devlin Barrett, Glenn Thrush, Alan Feuer, Maggie Haberman and Hamed Aleaziz, "Trump Justice Dept. Closed Investigation Into Tom Homan for Accepting Bag of Cash," New York Times (Sept. 22, 2025), https://nytimes.com/2025/09/20/us/politics/tom-homan-fbi-trump.html.

22. White House Press Secretary Karoline Leavitt defended DOJ's decision to shut down the Homan investigation, claiming "the border czar never took the $50,000." Myah Ward, "White House defends border czar in wake of closed DOJ probe: Homan did 'nothing wrong,'" *Politico* (Sept. 22, 2025), https://www.politico.com/news/2025/09/22/border-homan-white-house-defend-00575358.

23. Legal experts have disagreed with the statement that Homan did nothing wrong. For example, Randall Eliason, the former chief of public corruption prosecutions for the U.S.

Attorney's Office for the District of Columbia, pointed out that even of Homan could not be charged with bribery because he was not yet a public official when he accepted the $50,000 in cash, he could be "charged with conspiracy to commit bribery," which itself is a crime. Leonnig and Dilanian, *MSNBC.com*, Sept. 20, 2025.

24.     On September 22, 2025, Nick Schwellenbach on behalf of POGO submitted via the FBI's on-line portal a FOIA request seeking:

> any audio and video files made by the FBI in September 2024 of Thomas Douglas Homan; any transcripts of these recordings; FBI FD-302 reports, agent notes from witness interviews, and any FBI memos (e.g. letterhead memorandums, memorandums for the record, close-out memos) that are associated with this case involving Homan.

25.     POGO asked the FBI to limit its search to January 1, 2023 through the present and to provide the records in electronic format.

26.     POGO's FOIA request also pointed out that DOJ and the FBI had confirmed the existence of the Homan investigation and said the case was closed.

27.     POGO also requested expedited processing of its request. As Mr. Schwellenbach explained in justification of expedition, he is primarily engaged in disseminating information to the public and the information is urgently needed to inform the public about actual or alleged government activity. As he noted, according to recent reporting, the investigation into Homan for potentially taking a bribe in exchange for a promise to steer federal contracts was shut down after FBI Director Patel sought an update of the case. He further noted that the subject of POGO's FOIA request "implicates potential corruption and potential cover-up of that corruption involving the highest levels of the FBI, Justice Department, and White House, as well as the Department of Homeland Security, Customs and Border Protection, and Immigration and Customs Enforcement."

28. Mr. Schwellenbach certified that the statements in his request for expedition are true and correct.

29. POGO also requested a fee waiver, explaining that it has no commercial interest in the requested records, which will serve the public interest by significantly advancing what the public knows about the now-closed FBI investigation into corruption allegations concerning Homan, what the evidence showed when the case was closed, and the basis for closing the case.

30. POGO also requested that it not be charged search or review fees because Mr. Schwellenbach qualifies as a member of the news media, as evidenced the many news media outlets that have published his journalism.

31. By letter dated September 30, 2025, the FBI acknowledged receipt of Plaintiff's FOIA request and advised that its request for a public interest fee waiver is under consideration. The FBI further advised it had determined POGO is a news media requester for fee purposes.

32. On October 7, 2025, in response to an email inquiry of that date by POGO, the FBI advised that POGO's request for expedited processing is pending review.

33. In response to a further inquiry made 23 days after POGO's request for expedition, the FBI advised POGO by email dated October 16, 2025, that POGO's request for expedition is still under review.

34. To date Plaintiff has not received any additional correspondence from the FBI nor has the FBI made a determination on POGO's FOIA request.

35. Under U.S.C. § 552(a)(6)(C)(i), Plaintiff has now effectively exhausted all applicable administrative remedies with respect to its request.

**PLAINTIFF'S CLAIM FOR RELIEF**

**CLAIM ONE**
**(Wrongful Withholding of Non-Exempt Records)**

36. Plaintiff repeats and re-alleges paragraphs 1-35.

37. Plaintiff properly asked for records within the possession, custody and control of the FBI and DOJ.

38. Defendants DOJ and its subcomponent the FBI wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for making a determination on Plaintiff's September 22, 2025 FOIA request of the FBI.

39. Plaintiff POGO is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the records requested in its September 22, 2025 FOIA request at no cost to Plaintiff.

## CLAIM TWO
### (Failure to Grant Expedition)

40. Plaintiff repeats and re-alleges paragraphs 1-39.

41. Plaintiff properly asked that DOJ and the FBI expedite the processing of Plaintiff's September 22, 2025 FOIA request, which seeks agency records in the possession, custody and control of the FBI and DOJ, based on its showing of the urgency to inform the public about an actual or alleged Federal Government activity and that the request is made by a member of the media.

42. Defendants failed to make a determination on Plaintiff's request for expedition within 10 calendar days as the FOIA, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and DOJ regulations, 28 C.F.R. § 16.5(e)(4), require.

43. Plaintiff has exhausted all applicable administrative remedies with respect to Plaintiff's request for expedition.

44. Plaintiff is therefore entitled to injunctive and declaratory relief with respect to the immediate and expedited processing and disclosure of the requested records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendants to immediately and fully process plaintiff's September 22, 2025 expedited FOIA request and to disclose all non-exempt documents immediately and at no cost to Plaintiff;

(2) Issue a declaration that Plaintiff is entitled to the immediate processing and disclosure of the requested records at no cost to Plaintiff;

(3) Provide for expeditious proceedings in this action;

(4) Retain jurisdiction of the action to ensure no agency records are wrongfully withheld;

(5) Award Plaintiff its costs and reasonable attorney's fees in this action; and

(6) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, NW
Suite 640
Washington, DC 20015
Weismann.anne@gmail.com

Dated: October 29, 2025          *Attorney for Plaintiff*